### 9048

#### BENNETT v. COLLETON CYPRESS CO.

#### (84 S. E. 882.)

TRESPASS. ISSUES. WILFULNESS. PUNITIVE DAMAGES. CHARGE.

1. TRESPASS—ISSUES—WILFULNESS.—Where there was testimony tending to show that defendant, knowing timber on certain lands was not included in its title deeds, and after offering to buy it from plaintiff and plaintiff's refusal to sell, took it in such a way as to conceal their operations until after all desirable timber had been cut, the question whether there was a wilful invasion of plaintiff's rights by defendant was properly submitted to the jury.

2. CHARGE.—A substantial compliance with a request to charge is all that is necessary.

3. CHARGE.—A request to charge which ignores the presence of testimony on an issue to be submitted to the jury is properly refused.

Before RICE, J., Walterboro, March, 1914. Affirmed.

Action by A. Bennett against Colleton Cypress Company, A. McKenzie and A. Wigfall. From judgment for plaintiffs, defendants appeal. The facts and case are stated by the appellant as follows:

"The above entitled cause was tried before the Honorable Hayne F. Rice, presiding Judge, and a jury, at the March term, 1914, of the Court of Common Pleas for Colleton county, and resulted in a verdict in favor of the plaintiff and against the defendants, Colleton Cypress Company and Angus McKenzie, for the sum of twenty-five hundred dollars damages.

The complaint of the plaintiff was that the defendants, in the year 1910, entered upon certain lands belonging to the plaintiff, described in the complaint, and destroyed the timber growing thereon. For this alleged wrongful act the plaintiff sought damages, both actual and punitive. The answer of the defendants was that they cut no timber from the said lands of the plaintiff except such timber as the plaintiff himself had sold and conveyed to one C. B. Weekly, who, in turn, sold and conveyed the same timber to the defendant, Colleton Cypress Company.

At the close of the testimony plaintiff's counsel announced in open Court that they did not ask for any damages against the defendant, Wigfall.

All of the testimony shows that A. McKenzie was the general superintendent of the Colleton Cypress Company, and that all of his acts in relation to the cutting of this timber were done through and for the Colleton Cypress Company. The verdict of the jury, however, was against the Colleton Cypress Company and against A. McKenzie in his own right.

At the close of the testimony defendant's counsel requested the Court to instruct the jury that they could find no verdict against the defendants for punitive damages, there being no testimony tending to show any intentional, wilful or

wanton invasion of the plaintiff's rights and no testimony upon which a verdict for punitive damages could be based.·

The Court refused to instruct the jury as requested, and charged that, on the contrary, they could find for the plaintiff punitive as well as actual damages against the defendants.

The jury rendered a general verdict against the defendants for twenty-five hundred dollars damages. From the judgment entered upon this verdict the defendants appealed to the Supreme Court upon the exceptions set out in the case.

In order to discuss the exceptions intelligently, it is necessary to state, first, the essential facts of the controversy.

On December 1, 1909, the plaintiff, Abraham Bennett, for the consideration of four thousand dollars, duly conveyed unto C. B. Weekly (who later conveyed to Colleton Cypress Company) all of the trees and timber of every kind situated on the following described tracts of land:

Tract No. 1. Beginning where the line between A. Bennett and J. C. and Susan Padgett crosses the Owens Ford Causeway, running west to the corner of Mrs. M. J. Carter's land, thence south with the said M. J. Carter line, thence to the main run of Buckhead Swamp, thence northeast following the main run to Owens Ford Causeway, thence with the Owens Ford Causeway to the beginning, containing seventy-five acres, more or less.

Tract No. 2. Beginning at the nothwest corner of M. J. Carter's land and the northeast corner of A. Bennett's land, running west to the Barrony line, thence south on A. Bennett's land to the main run of Buckhead Swamp, thence with the run of Buckhead Swamp to M. J. Carter's land, thence with the line of M. J. Carter's land to the beginning, containing sixty acres, more or less.

Tract No. 3. Beginning at the highland of A. Bennett at a point about three hundred yards south of Bell's Causeway, known as the boat landing, running west to the main run

of Little Salkehatchie parallel with the causeway, thence down the swamp in the southerly direction to the line of Dr. J. P. Herndon, thence east and south and southeasterly to the highlands of A. Bennett, following the line of Dr. J. P. Herndon's land, thence on the mud line of Old Field Creek and Salkehatchie Swamp to the beginning, containing two hundred acres, more or less.

The plaintiff admitted the execution of this conveyance, but contended that the defendants cut timber over and beyond the boundary lines mentioned in the said deed.

The sole question of fact in the case was the location of certain boundary lines mentioned in the deed.

Tract No. 1 is not involved in the controversy, it being admitted that the defendants did not cut any timber beyond the boundaries of that tract as mentioned in the said deed.

The only disputed boundary line of tract No. 2 is 'the main run of Buckhead Swamp.' The plaintiff owned land lying on both sides of the main run of Buckhead Swamp, but sold to the defendant only the timber on the west side of the said run, the said run being the eastern boundary of tract No. 2. The contention of the plaintiff was that the defendants in cutting the timber crossed to the east side of the said main run. The defendants denied this.

The undisputed testimony shows that Buckhead Swamp has many runs. The sole issue of fact in so far as tract No. 2 is concerned is the true location of the main run, which one of the many runs is the main run.

The only disputed boundary line of tract No. 3 is the correct location of the point known as the 'boat landing,' mentioned in the deed.

The plaintiff contended that the boat landing referred to in the deed is located on the main run of Little Salkehatchie River.

The defendants contended that the boat landing referred to in the deed is located, not on the main run of Little Salkehatchie River, but 'at the highland of A. Bennett.'

· The testimony shows that there were in fact two boat landings on tract No. 3, one located on the main run of the Salkehatchie River and the other located at the highland of A. Bennett. Which of the two is the boat landing referred to in the deed?"

*Messrs. Howell & Gruber,* for appellant, cite: *As to necessity for new trial:* 63 S. C. 467; 70 S. C. 216; 73 S. C. 183; 62 S. C. 17; 80 S. C. 47.

*Messrs. Padgett & Moorer,* for respondent, cite: *As to punitive damages:* 87 S. C. 293.

· April 1, 1915.

After reciting the foregoing statement of facts, the opinion of the Court was delivered by MR. JUSTICE FRASER.

There are seven exceptions, but the appellant argues only four, Nos. 1, 2, 6 and 7, and consolidates 6 and 7.

The first question argued by appellant is the consolidation of 6 and 7, and raises the question, is there any evidence to sustain a verdict for punitive damages?

The question as to which of two bodies of water in a swamp is the main run is a question of fact for the jury.

There was much conflict of testimony, but it was the province of the jury to locate the main run. If the jury concluded that the western body was the main run and the defendants cut the timber beyond that run, then the defendant trespassed on the plaintiff's land and was liable for actual damages.

There was testimony that the defendants offered to buy the timber across the western run and the plaintiff refused to sell it. That the timber was cut so as to conceal operations until all the desirable timber was cut.

If the jury believed that the defendants tried to buy the timber on the disputed area and the plaintiff refused to sell,

and that it was not included in its deed and defendants knew it, but the defendants took it anyway, they could have given damages for a wilful invasion of plaintiff's rights.

The exceptions that raise this question can not be sustained.

The first exception is as follows:

"That the presiding Judge erred in refusing to charge the jury defendant's third request to charge, such request being as follows:

'That in the said deed the boat landing mentioned as the starting point of the said boundary is described as being located at the highland of the plaintiff, the boundary line running therefrom west to the main run of little Salkehatchie. That in order to recover for an alleged trespass in crossing this boundary line it was incumbent upon the plaintiff to prove to the satisfaction of the jury the location of this boat landing at the highlands of the plaintiff, and the burden is not met by proving the location of a boat land- · ing in Salkehatchie Swamp at or near the stream or channel and entirely away from the highlands of the plaintiff, such proof being inconsistent with the terms of the deed referred to and the allegations of the complaint.' It is respectfully submitted that such request contained a sound principle of law, was directly applicable to the issues involved, and the presiding Judge was in error in refusing to charge the same."

In response to that request to charge, Judge Rice said:

"Mr. Foreman and gentlemen of the jury, I cannot charge you that in exactly those words, because it seems to me that that contains some reference to the facts, and I am not allowed to even intimate what I think about the facts in this case. I will say this, that the reference of this deed is as to the boat landing on the highlands of Mr. Bennett, the deed says tract No. 3, 'beginning at the highlands of A. Bennett at a point,' etc. Now, of course, you know as well as I do that highlands and swamp lands are not one and

the same, and a boat landing on the highlands would not be a boat landing in the swamp, and it is hardly necessary for me to say that proof of a boat landing in the swamp is not proof of a boat landing on the highlands."

That was a substantial charge of the request. This exception can not be sustained.

That the presiding Judge was in error in refusing to charge defendant's fourth request, as follows:

" 'That in considering the question as to whether or not the plaintiff has shown any right to recover of the defendants, or either of them, the jury will disregard all claims for damages for the alleged trespass on the lands of the plaintiff lying to the south of what is known as Bell's Causeway,' there being a total failure on the part of the plaintiff to introduce any competent testimony showing damages to his property on the south side of the said causeway."

There was testimony to the contrary, and his Honor could not have so charged.

This exception can not be sustained.

Judgment affirmed.